# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARICELA RAMIREZ**, <br><br> Plaintiff, <br><br> v. <br><br> **ADVENTIST MEDICAL CENTER, et al.**, <br><br> Defendants. | Case No. 3:17-cv-0831-SI <br><br> **OPINION AND ORDER** |

Maricela Ramirez. Plaintiff, *pro se*.

Rodney K. Norton, HART WAGNER, LLP, 1000 SW Broadway, Portland, OR 97205. Stephanie C Kucera, HART WAGNER, LLP, 439 SW Umatilla Avenue, Redmond, OR 97756. Of Attorneys for Defendant Adventist Medical Center.

Robert M. Keating, Kelly Frances Huedopohl, and Tamara X. Arthur, KEATING JONES HUGHES, P.C., One SW Columbia, Suite 800, Portland, OR 97258-2095. Of Attorneys for Defendants Tania Shaw, MD and Krista Swaninger, MD.

Melissa J. Bushnick and Grant D. Stockton, BRISBEE & STOCKTON LLC, 139 NE Lincoln Street, Hillsboro, OR 97123. Of Attorneys for Defendant Providence Health & Services – Oregon *doing business as* Providence St. Vincent Medical Center.

Chelsea J. Glynn and Donald E. Templeton, DUNN CARNEY ALLEN HIGGINS & TONGUE, LLP, 851 SW Sixth Avenue, Suite 1500, Portland, OR 97204-1357. Of Attorneys for Defendant Metro West Ambulance Service, Inc.

**Michael H. Simon, District Judge.**

Plaintiff Maricela Ramirez ("Plaintiff") brings this *pro se* lawsuit against Metro West Ambulance Service, Inc. ("Metro West") and several other defendants, alleging medical malpractice, discrimination, retaliation, breach of fiduciary duty, fraud, and intentional infliction of emotional distress. Plaintiff alleges in her Second Amended Complaint ("Complaint") the following claims against Metro West: (1) violation of 42 U.S.C. § 1981; (2) violation of Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a); (3) violation of Oregon Revised Statutes ("ORS") § 659A.403; (4) conspiracy and fraudulent concealment under 18 U.S.C. § 1512; and (5) intentional infliction of emotional distress. Plaintiff alleges that Metro West paramedics discriminated against her on the basis of race. Before the Court is Metro West's motion for summary judgment. For the reasons stated below, the motion is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

It is the responsibility of the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Keiffer v. Pernsteiner*, 967 F.2d 527 (9th Cir. 1992). In order for a party to avoid summary judgment, such facts must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed R. Civ. P. 56(c)(1)(A). Where an affidavit or declaration is relied on to oppose a summary judgment motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed R. Civ. P. 56(c)(4). Where the party opposing summary judgment is proceeding *pro se*, the court "must consider as evidence . . . all of [that party's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## BACKGROUND

Plaintiff has not attested to the veracity of any of her contentions, as she must in order for the court to consider those contentions as evidence. Although Plaintiff has submitted several exhibits, she has similarly not submitted any declaration attesting to the truth of those exhibits. Nonetheless, the Court will, for purposes of this motion, presume that all of Plaintiff's exhibits has been properly authenticated.

On October 8, 2015, Plaintiff called 911. She was suffering from a nose bleed due to a garlic clove lodged in her nose. ECF 109 at 4; ECF 95 at 2; ECF 96 at 2; ECF 97 at 2. Two

PAGE 3 – OPINION AND ORDER

Metro West paramedics, Michelle Smith and Jacob Farmer, responded to the call and arrived at Plaintiff's home. When Plaintiff opened the door, Farmer told Plaintiff that if they took her to the hospital in an ambulance it would be expensive. Farmer and Smith both told Plaintiff that they had instructed another ambulance, which had also been called to Plaintiff's home, not to come.

Because of the garlic clove in her nose, Plaintiff could only breathe through her left nostril, and was able to speak but only slowly.[1] ECF 109 at 10. Plaintiff asked that the paramedics remove the garlic from her nose, but they did not have the equipment or training to do so. ECF 96 at 2; ECF 97 at 2. Farmer checked Plaintiff's vitals and concluded that they were normal. ECF 96 at 2; ECF 97 at 2. Plaintiff alleges that her blood pressure was in fact very low, though she does not describe how she knew this. ECF 109 at 10. Both Farmer and Smith determined that the garlic was not compromising Plaintiff's breathing and that she therefore did not need emergency transport.[2]

According to Plaintiff, Farmer and Smith "refused" to transport her to the emergency room—though Plaintiff also does not state that she asked to be taken to the emergency room.[3]

---

[1] Both Farmer and Smith stated in their declarations that Plaintiff was able to breathe out of both nostrils and speak in full sentences. Viewing the facts in the light most favorable to Plaintiff, however, the Court presumes that Plaintiff's breathing was obstructed in her right nostril.

[2] Although Plaintiff states that she could only breathe through one nostril, she does not, and has no personal knowledge upon which to, contest that Farmer and Smith—correctly or incorrectly—concluded that Plaintiff's breathing was not compromised and that Plaintiff did not need emergency transport.

[3] According to Farmer and Smith, Plaintiff stated that she wanted to go to the emergency room at St. Vincent Hospital. The paramedics told Plaintiff that St. Vincent was "on divert," which means that it was not accepting new emergency room patients via ambulance. Therefore, Metro West could not transport her there. Farmer and Smith told Plaintiff that they could take her to another hospital, although they did not consider her situation to be an emergency. Plaintiff insisted that she wanted to go to St. Vincent. Smith and Farmer told Plaintiff that she could take another form of transportation to St. Vincent. ECF 96, ECF 97.

Instead of transporting Plaintiff to the emergency room, Smith and Farmer called a taxi cab, which arrived about 20 minutes later. ECF 109 at 11. The taxi arrived before Smith and Farmer departed.[4] ECF 96 at 3; ECF 97 at 3. The taxi driver helped Plaintiff into the taxi and took Plaintiff to St. Vincent's emergency room.[5] ECF 109 at 11.

Plaintiff also alleges that the Metro West paramedics accessed Plaintiff's electronic health record at some point and read that they "had" to cover up that Plaintiff in fact had kidney failure and other "internal organ diseases." Plaintiff alleges that the paramedics read in her records that Plaintiff had filed a discrimination complaint against OHSU and other health care providers and that the paramedics retaliated against her for these complaints. Plaintiff's claim that Smith and Farmer accessed her health care records is not based on Plaintiff's personal knowledge, and it is not supported by any evidence in the record. Therefore, the Court does not consider these alleged facts.

Smith and Farmer testified that they have each since reviewed some of Metro West's records from this incident, and that the records do not list Plaintiff's name, race, or ethnicity.

---

[4] Plaintiff asserts that the paramedics left before the taxi cab arrived, though she indicates that this assertion is based on the fact that she never saw the ambulance in front of her house. ECF 109 at 11. Because it is possible that Plaintiff simply did not see the ambulance in front of her house, or the ambulance was parked elsewhere or out of view, Plaintiff does not genuinely dispute Smith and Farmer's declarations that they were still on-scene when the taxi cab arrived.

[5] Plaintiff alleges that neither Farmer nor Smith told her that St. Vincent was not accepting ER patients by ambulance, as Smith and Farmer state that they did. Plaintiff does allege, however, that St. Vincent "never told Plaintiff that they had told Metro West Ambulance paramedics earlier that it was on divert and that it was not accepting new ER patients by ambulance." ECF 109 at 11. Plaintiff suggests that this proves that Smith and Farmer lied when they stated in their declarations that they told Plaintiff this was the case. But simply because nobody at St. Vincent told Plaintiff that they had reported to MetroWest that they were on divert does not mean that they did not do so. Plaintiff may mean to suggest that someone at St. Vincent told her that they had in fact *not* told Metro West that. Regardless, this fact is not material to the parties' dispute.

Neither Smith nor Farmer remembers Plaintiff's name, race, or ethnicity. Each of them remembers the incident, however, because it was an unusual incident. Each stated in their declarations that Plaintiff's race or ethnicity played no part in their treatment of her.

## DISCUSSION

### A. Claims of Discrimination

Plaintiff's claims under 42 U.S.C. § 1981, 42 U.S.C. § 2000a, and ORS 659A.403 all stem from her assertion that Metro West paramedics Smith and Farmer discriminated against Plaintiff on the basis of her race. Plaintiff supports her argument with the following evidence. First, according to Plaintiff, Metro West paramedics refused to take her to the emergency room when she had a nose bleed due to a foreign object stuck in her nose. Plaintiff states, with no evidence supporting this assertion, that Plaintiff's race was a determinative factor in the paramedics' decisions. As evidence of the alleged discriminatory intent, Plaintiff points to two other incidents involving Metro West. First, in October 2017 a white man suffered a heart attack during the Portland Marathon. Metro West responded and provided the man with medical care. Second, Plaintiff recently witnessed Metro West paramedics provide medical care and "ambulance services" to individuals involved in a car accident near Plaintiff's home; those individuals were of a different race than Plaintiff. Plaintiff argues these incidents prove that Metro West has treated persons of a different race than Plaintiff more favorably under similar circumstances. These facts present very different circumstances, including medical emergencies, and do not rise to the level of creating a genuine dispute of material fact on the issue of whether Metro West discriminated against Plaintiff. Therefore, Plaintiff's discrimination claims against Metro West are dismissed.

### B. Conspiracy and Fraudulent Concealment

Plaintiff alleges in her fourth cause of action that Defendants engaged in conspiracy and fraudulent concealment, and aiding and abetting fraudulent concealment, in violation of Title 18 of the U.S. Code, Section 1512. Title 18, however, is the federal criminal code. Thus, Plaintiff does not state a private, civil claim by alleging a violation of 18 U.S.C. § 1512. Plaintiff's claim for conspiracy and fraudulent concealment is dismissed.

### C. Intentional Infliction of Severe Emotional Distress

Under Oregon law,

> To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

*McGanty v. Staudenraus*, 321 Or. 532, 543-44 (1995) (quoting *Sheets v. Knight,* 308 Or. 220, 236 (1989). The intent element requires that "the actor desires to inflict severe emotional distress, and . . . knows that such distress is certain, or substantially certain, to result from his conduct." *McGanty*, 321 Or. at 550.

Plaintiff has put forward no evidence that Metro West or its paramedics intended to inflict severe emotional distress on Plaintiff, or that their acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. Plaintiff argues that Smith and Farmer purposely denied her medical treatment, conspired to cover-up her true medical condition, and retaliated against her for a complaint she had filed against another entity. Plaintiff also alleges that the paramedics did this because of discrimination. Plaintiff has no evidence supporting any of these conclusions, and they are refuted by the evidence that Metro West has put in the record.

There is also no evidence that either Smith or Farmer knew about Plaintiff's prior complaint against OHSU or the Oregon Health Authority, that they saw Plaintiff's medical records before treating her, or that they had any contact with other agencies about Plaintiff. Smith and Farmer stated that they checked Plaintiff's vital signs, which were normal, and concluded that Plaintiff did not need emergency transport.

In addition, Plaintiff alleges that her blood pressure was very low at the time that Farmer told Plaintiff her blood pressure was normal. Plaintiff, however, has not provided any evidence that she has medical training or any other factual basis for this conclusion. Further, even if Farmer had incorrectly read Plaintiff's blood pressure, and even if Farmer and Smith were incorrect in concluding that Plaintiff did not require emergency transport, there is no evidence that Smith or Farmer acted with any intent to cause Plaintiff emotional distress or that their conduct exceeded the bounds of socially tolerable conduct. Plaintiff's claim for intentional infliction of emotional distress is, therefore, dismissed.

### D. Plaintiff's Other Claims

Plaintiff does not allege any other claims against Metro West. In her response to Metro West's motion for summary judgment, Plaintiff argues that she also has claims against Metro West for medical malpractice, a violation of 42 U.S.C. § 1983, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty. Plaintiff indicates that she intends to move to file a Third Amended Complaint, although she has not yet filed such a motion. Summary judgment is not the time to allege new causes of action.

## CONCLUSION

For the reasons discussed herein, Defendant Metro West's motion for summary judgment (ECF 94) is GRANTED. All of Plaintiff's claims against Metro West are dismissed with prejudice.

**IT IS SO ORDERED**.

DATED this 26nd day of December, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge