IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARICELA RAMIREZ**, | Case No. 3:17-cv-831-SI |
| Plaintiff, | **AMENDED OPINION AND ORDER** |
| v. | |
| **ADVENTIST MEDICAL CENTER**, *et al*., | |
| Defendants. | |

Maricela Ramirez. Plaintiff, *pro se*.

Rodney K. Norton, HART WAGNER, LLP, 1000 SW Broadway, Portland, OR 97205. Stephanie C Kucera, HART WAGNER, LLP, 439 SW Umatilla Avenue, Redmond, OR 97756. Of Attorneys for Defendant Adventist Medical Center.

Robert M. Keating, Kelly Frances Huedopohl, and Tamara X. Arthur, KEATING JONES HUGHES, P.C., One SW Columbia, Suite 800, Portland, OR 97258-2095. Of Attorneys for Defendants Tania Shaw, MD, and Krista Swaninger, MD.

Michael T. Stone and Grant D. Stockton, BRISBEE & STOCKTON, LLC, 139 NE Lincoln Street, Hillsboro, OR 97123. Of Attorneys for Defendant Providence Health & Services – Oregon *doing business as* Providence St. Vincent Medical Center.

Chelsea J. Glynn and Donald E. Templeton, DUNN CARNEY ALLEN HIGGINS & TONGUE, LLP, 851 SW Sixth Avenue, Suite 1500, Portland, OR 97204-1357. Of Attorneys for Defendant Metro West Ambulance Service, Inc.

John Clinton Geil, Oregon Department of Justice, 100 SW Market Street, Portland, OR 97201. Of Attorney for Defendants State of Oregon, Oregon Department of Justice, Oregon State Board of Nursing, Oregon Health Authority, Suzanne Meadows, and Charla Stephenson.

**Michael H. Simon, District Judge.**

Plaintiff Maricela Ramirez ("Plaintiff") brings this *pro se* lawsuit against various defendants, alleging medical malpractice, discrimination, retaliation, breach of fiduciary duty, fraud, and intentional infliction of emotional distress. Plaintiff's claims arise out of several encounters with medical providers. Before the Court are various motions by Plaintiff and several Defendants.

## DISCUSSION

**A. Defendant Meadows and Stephenson's Motion for Summary Judgment (ECF 98)**

At the time of the events giving rise to this lawsuit, Defendant Charla Stephenson was a Complaint Intake Coordinator at the Oregon Health Authority and Defendant Suzanne Meadows was an Investigator at the Oregon Board of Nursing (collectively, "Individual State Defendants"). In her Second Amended Complaint ("SAC"), Plaintiff asserted the following claims against Stephenson and Meadows: (1) violation of 42 U.S.C. § 1983; (2) conspiracy and fraudulent concealment under 18 U.S.C. § 1512; (3) aiding and abetting breach of fiduciary duty; and (4) intentional infliction of emotional distress. Per the Court's Order (ECF 141), on December 26, 2017, Plaintiff filed a Third Amended Complaint ("TAC"). ECF 152. At the time Plaintiff filed her TAC, the Individual State Defendants had a pending motion for summary judgment (ECF 98) against Plaintiff's SAC.

As explained by a leading treatise on civil procedure:

> Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider

> the motion as being addressed to the amended pleading.... To hold
> otherwise would be to exalt form over substance.

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1476. Because the claims against the Individual State Defendants in Plaintiff's TAC mirror those in Plaintiff's SAC, and because the same principle would apply to a motion for summary judgment as a motion to dismiss, the Court construes the Individual State Defendants' pending motion for summary judgment (ECF 98), and Plaintiff's responsive brief, as against Plaintiff's TAC.

**1. Standards**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

It is the responsibility of the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Keiffer v. Pernsteiner*, 967 F.2d 527 (9th Cir. 1992). In order for a party to avoid summary judgment, such facts must be supported by "citing to particular

parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed R. Civ. P. 56(c)(1)(A). Where an affidavit or declaration is relied on to oppose a summary judgment motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed R. Civ. P. 56(c)(4). Where the party opposing summary judgment is proceeding *pro se*, the court "must consider as evidence . . . all of [that party's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## 2. Background[1]

In July 2012, Plaintiff sought treatment at a health clinic and was seen by Nurse Practitioner Lawrence Maldanado. ECF 111-1 at 7. In a complaint that Plaintiff filed with the Oregon Health Authority, Plaintiff claimed that Maldanado covered up Plaintiff's actual medical condition and treated Plaintiff in an unethical manner. ECF 111-1 at 7. Meadows reviewed Plaintiff's complaint and obtained and reviewed records and notes relating to Maldanado's treatment of Plaintiff. Meadows wrote a report and submitted her findings to the Oregon State Board of Nursing. Meadows did not see any evidence that Maldanado had violated any laws or rules. The Board of Nursing, by vote, determined that Plaintiff's complaint against Maldanado

---

[1] Plaintiff has not attested to the veracity of any of her assertions made, as she must for the court to consider those assertions as evidence. Although Plaintiff has submitted several exhibits, she similarly has not submitted any declaration attesting to the authenticity of those exhibits. Nonetheless, the Court will, for purposes of this motion, presume that all of Plaintiff's exhibits have been properly authenticated.

PAGE 4 – AMENDED OPINION AND ORDER

should be dismissed. ECF 100 at 2. According to Plaintiff, Meadows told Plaintiff that the Oregon State Board of Nursing had investigated the results of Plaintiff's blood work taken during Plaintiff's visit with Maldanado, that Plaintiff's blood work was normal, that the Oregon State Board of Nursing decided not to take disciplinary action against Maldanado, and that Plaintiff should consult a psychiatrist.[2]

Separately, on October 8, 2015, Plaintiff sought treatment at Providence St. Vincent Medical Center ("Providence"). A doctor removed a foreign object from Plaintiff's nostril. According to Plaintiff, she was told that her blood pressure was very low. Plaintiff alleges that Providence discriminated against her on the basis of her race, deliberately misdiagnosed her, and refused to hospitalize her or provide any other treatment. Plaintiff filed a complaint against Providence with the Oregon Health Authority ("OHA"). OHA informed Plaintiff by letter that a complaint investigation was not warranted. ECF 111-1 at 12. Stephenson approved the letter sent to Plaintiff. *Id.* Plaintiff wrote to Stephenson, objecting to OHA's decision. ECF 111-1 at 16-17. Plaintiff explained that she believed that she should have been admitted to the hospital. Four days later, Stephenson wrote to Plaintiff again, explaining that "[t]here are no laws that require a hospital to admit as an inpatient every patient who presents to the emergency department." ECF 111-1 at 18. Further, Stephenson explained that medical decision-making and physician conduct was not within the jurisdiction of the Oregon Health Authority and that Plaintiff's concerns would be more properly addressed by the Oregon Medical Board. Stephenson provided Plaintiff with contact information for the Oregon Medical Board. ECF 111-1 at 18.

Plaintiff further alleges that at some point the Individual State Defendants each accessed Plaintiff's medical records from various medical providers and learned that they had to "cover

---

[2] Although not material for purposes of the pending motion, Meadows disputes that she told Plaintiff to see a psychiatrist.

up" Plaintiff's actual medical condition, as a retaliatory act against a prior discrimination claim that Plaintiff made against a medical provider. Plaintiff, however, has no personal knowledge of these alleged facts, and they are not supported by any evidence in the record.

### 3. Discussion

#### a. Section 1983 Claim

Plaintiff argues that by declining to investigate Plaintiff's claim against Providence, Stephenson discriminated against Plaintiff on the basis of race. Plaintiff also argues that Meadows discriminated against Plaintiff by telling Plaintiff that the Board of Nursing had concluded that Plaintiff's blood tests were normal and that telling her that Plaintiff should see a psychiatrist. There is no evidence to support Plaintiff's claim under § 1983.

Stephenson reviewed Plaintiff's complaint regarding her treatment at Providence and concluded that OHA did not have authority to investigate Plaintiff's claim. Stephenson told Plaintiff that the Oregon Medical Board was the proper body to investigate Plaintiff's complaint. Plaintiff's claim against Meadows is that Meadows informed Plaintiff of the Board of Nursing's decision regarding her complaint against Nurse Practitioner Maldonado and Meadows told Plaintiff that her blood work was normal and recommended that Plaintiff consult a psychiatrist. Plaintiff states that her blood work could not have been normal, but provides no evidence to that effect. Even if Plaintiff's blood work was abnormal, there are no facts to support Plaintiff's argument that Meadows knew this and deliberately covered it up. There simply are no facts upon which a reasonable jury could conclude that the Individual State Defendants committed any violation of Plaintiff's civil rights. Therefore, Plaintiff's § 1983 claim is dismissed.

#### b. Fraudulent Concealment

Plaintiff alleges in her fourth cause of action that Defendants engaged in conspiracy and fraudulent concealment, and aided and abetted fraudulent concealment, in violation of 18 U.S.C.

PAGE 6 – AMENDED OPINION AND ORDER

§ 1512. Title 18 of the U.S. Code, however, is the federal criminal code. Plaintiff does not state a private, civil claim by alleging a federal violation under 18 U.S.C. § 1512. Further, there simply are no facts upon which a reasonable jury could conclude that the Individual State Defendants engaged in or aided and abetted an unlawful conspiracy or fraudulent concealment. Plaintiff's claims for conspiracy and fraudulent concealment are dismissed.

### c. Aiding and Abetting Breach of Fiduciary Duty

Plaintiff alleges that the Individual State Defendants, by failing to investigate Plaintiff's claims, aided and abetted a breach of fiduciary duty committed by Plaintiff's medical providers. The Individual State Defendants move to dismiss on the ground that Plaintiff does not state a claim for relief, and that even if she did, the Individual State Defendants would be entitled to qualified immunity. Neither party has cited to any authority on what constitutes the aiding and abetting of a breach of fiduciary duty.[3]

Oregon courts have looked to § 876 of the Restatement (Second) of Torts to decide when someone may be held liable for the tort of another. *See Horton v. Nelson*, 252 Or. App. 611, 617 (2012) (citing the Restatement); *Granewich v. Harding*, 329 Or. 47, 53 (1999) (same). The Restatement provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

---

[3] Plaintiff invites the Court to review *Patterson v. Hudson Area Schools*, 551 F.3d 438 (6th Cir. 2009), but *Patterson* does not contain the material that Plaintiff quotes, purportedly from that case. Further, the opinion does not discuss fiduciary duties or aiding and abetting liability.

PAGE 7 – AMENDED OPINION AND ORDER

> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979).

Even assuming, *arguendo*, that Maldanado and Providence had a fiduciary relationship with Plaintiff and breached those duties, Plaintiff has not created a genuine dispute of fact that would allow as a reasonable inference that either Meadows or Stephenson is liable to Plaintiff for those breaches. There is no evidence in the record that either Meadows or Stephenson acted in concert with any of Plaintiff's medical providers or with a common design. Nor is there evidence that either Meadows or Stephenson gave substantial assistance or encouragement to either of Plaintiff's medical providers to act in the way that the providers did toward Plaintiff. Rather, the Individual State Defendants' involvement began only *after* Plaintiff filed her respective complaints—well after the medical treatment at issue in those complaints.

Plaintiff asserts that a "failure to investigate" can constitute "active participation" for purposes of an aiding and abetting claim. Again, neither party cites to any case law on this matter. At least some courts have found, at least in certain circumstances, that "a failure to investigate can constitute 'active participation' to support an 'aiding and abetting' claim." *Delisi v. Nat'l Ass'n of Prof'l Women, Inc.*, 48 F. Supp. 3d 492, 496 (E.D.N.Y. 2014). Nonetheless, Meadows and the Board of Nursing did, in fact, investigate Plaintiff's claim against Maldanado, but concluded that that no violation had occurred because Plaintiff's blood work was, in fact, normal.

Also, although the Oregon Health Authority did not launch an investigation into Plaintiff's complaint about Providence, Stephenson reviewed Plaintiff's claim and informed Plaintiff that the Oregon Health Authority was not the proper board to hear Plaintiff's complaint. Even assuming that Plaintiff's medical providers breached a duty to Plaintiff, no reasonable jury

could conclude, based on the evidence presented, that either Meadows or Stephenson aided and abetted any such breach.

### d. Intentional Infliction of Emotional Distress

The Individual State Defendants argue that Plaintiff's state-law claim for intentional infliction of emotional distress is subject to a 180-day tort claim notice requirement under Oregon Revised Statutes ("ORS") § 30.275. Plaintiff attaches, as an errata sheet to her opposition to the pending motion for summary judgment, a statement that she did file a tort claim notice. ECF 119 at 1. Plaintiff also attaches a tort claim notice against the Oregon State Board of Nursing, signed February 23, 2016, detailing Plaintiff's claim against Meadows.

Even assuming that Plaintiff properly filed a tort claim notice pursuant to ORS § 30.275, the Individual State Defendants further argue that the State of Oregon must be substituted as the sole defendant in Plaintiff's state law claim and that the State of Oregon should be dismissed based on the Eleventh Amendment to the United States Constitution.

ORS § 30.265 provides:

> If an action under ORS 30.260 to 30.300 alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action against the public body. If an action is filed against an officer, employee or agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the court upon motion shall substitute the public body as the defendant.

ORS §§ 30.260-30.300 govern tort actions against public bodies. Plaintiff alleges damages of $100,000. Plaintiff's tort claim against Meadows and Stephenson is governed by ORS § 30.271, which allows damages of well over $100,000. Therefore, the Court substitutes the State of Oregon as the sole defendant in Plaintiff's claim for intentional infliction of emotional distress.

PAGE 9 – AMENDED OPINION AND ORDER

This Court previously dismissed the State Defendants named in Plaintiff's Complaint based on the Eleventh Amendment. The Eleventh Amendment bars citizens' suits against states in federal court. A state is immune from suit in federal court unless Congress has abrogated the state's immunity by appropriate federal legislation, or the state itself has waived it. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011); *see also Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). The Oregon Tort Claims Act provides for a limited waiver of sovereign immunity, but it is not a waiver of Eleventh Amendment immunity from suit in federal court. *See Millard v. Or. Dep't of Corr.,* 2014 WL 2506470, at *14 (D. Or. June 3, 2014). Therefore, Plaintiff's claim for intentional infliction of emotional distress against the Individual State Defendants is dismissed.

   e. **Conclusion**

The Individual State Defendants' motion to dismiss (ECF 98) is granted. Plaintiff's claims against Suzanne Meadows and Charla Stephenson are dismissed with prejudice.

**B. Plaintiff's Claims Against Dismissed Defendants (ECF 152)**

Plaintiff's claims against the following defendants have previously been dismissed from this case with prejudice: Metro West Ambulance Service, Inc. (ECF 149); Adventist Medical Center (ECF 108, 141); Krista Swaninger (ECF 108, 141); State of Oregon (ECF 78); Oregon Department of Justice (ECF 78); Oregon Board of Nursing (ECF 78); and Oregon Health Authority (ECF 78). In her TAC, Plaintiff names each of these defendants. Because the Court has already dismissed Plaintiff's claims against these Defendants, Plaintiff's claims against these Defendants are hereby dismissed from Plaintiff's TAC.

### C. Plaintiff's Motion for Reconsideration (ECF 158)

Plaintiff's motion for reconsideration (ECF 158) of the Court's December 22, 2017 Order (ECF 149) is denied. Plaintiff has not demonstrated that she is entitled to reconsideration of the Court's decision.

### D. Providence's Motion to File Late Summary Judgment and MSJ (ECF 160)

Providence asks the Court to extend the deadline to file dispositive motions. ECF 160. Providence includes in its motion a proposed motion for summary judgment. The deadline for filing dispositive motions against Plaintiff's SAC was October 6, 2017. Regardless of whether such an extension would be warranted against Plaintiff's SAC, Providence is named in Plaintiff's TAC, which was filed on December 27, 2017. Because the Court has not yet set a schedule for dispositive motions with respect to the TAC, Providence's request to file its motion for summary judgment is granted. Providence may file a motion for summary judgment within ten days of this Opinion and Order, as requested.

### E. Plaintiff's Motions to Compel (ECF 162)

Plaintiff's motion to compel defendant-physicians to testify as medical experts (ECF 162) is denied. Plaintiff may obtain factual evidence from any party or non-party consistent with the Federal Rules of Civil Procedure. The Court will not, however, require any party or non-party to provide expert opinion testimony.

### F. Defendant Shaw's Motion to Dismiss (ECF 164)

In the Court's Opinion and Order dated October 24, 2017 (ECF 108), the Court dismissed Plaintiff's claims against Adventist Medical Center ("Adventist"), Tania Shaw, and Krista Swaninger. The Court found that Plaintiff's claims against Adventist and Swaninger were barred by the doctrine of claim preclusion. The Court further found that Plaintiff's claims against Shaw were untimely or otherwise barred by applicable statute. Plaintiff filed a motion for

PAGE 11 – AMENDED OPINION AND ORDER

reconsideration (ECF 114) arguing, among other things, that the Court applied an incorrect statute of limitations to her claim arising under 42 U.S.C. § 1981. On December 15, 2017, the Court granted Plaintiff's motion in part (ECF 141). The Court found that, to the extent that Plaintiff alleged a § 1981 claim relating not to her ability to enter into or enforce contracts in court, but relating to allegedly discriminatory treatment under existing contracts, Plaintiff's § 1981 claim against Shaw was timely. The Court further found, however, that Plaintiff had failed to state such a claim. The Court granted Plaintiff leave to amend her complaint, and Plaintiff again alleges that when she visited Adventist, she was deliberately discriminated against on the basis of her race, deliberately misdiagnosed, and deliberately denied hospitalization and appropriate medical care, observation, and follow-up. Shaw moves to dismiss.

1. Standards

A motion to dismiss for failure to state a claim may be granted when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

   **2. Discussion**

Plaintiff's claims against Shaw arise out of two visits to Adventist's Emergency Department, on May 26 and 27, 2013. In her SAC, Plaintiff alleged the following facts:[4] First, Plaintiff alleged that when she arrived at Adventist's emergency room, the staff in the registration window was rude to her and "openly discriminated against her." When Plaintiff approached the admission window she was told to stand back while an Adventist employee helped a white woman. Plaintiff alleged that this other patient's condition was not as serious as Plaintiff's. Plaintiff alleged that she waited several hours for treatment. During that time, Plaintiff alleged, other patients, a majority of whom were white, received care. Plaintiff also alleged that during one of her two visits to Adventist, a man sitting next to Plaintiff told her that she had been waiting too long and that other people who arrived after Plaintiff did had been seen. Additionally, while Plaintiff was in a patient room, she asked a nurse for a blanket and was not provided with one. Plaintiff further alleged that the Defendants, generally, refused to hospitalize her and told her that her results were normal when, according to Plaintiff, they could not have

---

[4] Plaintiff's SAC did not allege any facts specific to Shaw. Plaintiff simply alleged that Shaw was either an employee or independent contractor of Adventist Medical Center. The Court, nonetheless, liberally construed Plaintiff's *pro se* complaint to allege that Shaw herself was responsible for *everything* that took place during Plaintiff's two May 2016 visits to Adventist. Those are the facts the Court now recites.

PAGE 13 – AMENDED OPINION AND ORDER

been normal. The Court concluded that these facts were insufficient to state a claim for discrimination under § 1981.

Plaintiff alleges in her TAC the following additional facts with respect to her § 1981 claim against Shaw. Plaintiff alleges that she has renal failure and that "[a]ll renal failure patients should be transported to the emergency department for additional assessment and treatment." Plaintiff argues that Shaw failed to stabilize Plaintiff's condition or transfer Plaintiff to another facility for further treatment, and thus violated § 1981. Plaintiff alleges that Shaw covered up the fact that Plaintiff had kidney failure and liver, gallbladder, and heart disease, and denied Plaintiff access to medical specialists. Plaintiff also alleges that Shaw retaliated against Plaintiff for a previous discrimination complaint Plaintiff had made against Dr. Chow, who Plaintiff alleges was Shaw's colleague. Plaintiff alleges that Shaw's retaliation against Plaintiff involved subjecting Plaintiff to blood tests, covering up her illnesses, and writing false diagnoses in Plaintiff's medical records. Plaintiff also alleges that Shaw denied Plaintiff access to palliative care and wrongfully discharged Plaintiff when Plaintiff needed continued treatment. Plaintiff also adds that some evidence has shown that members of racial or ethnic minorities may receive a lower quality of medical care than others, and that doctors and other providers may be influenced by stereotypes or prejudices when treating certain patients. Finally, Plaintiff alleges that Shaw had a contract with Regence Blue Cross Blue Shield of Oregon, Plaintiff's medical insurance provider, and that Plaintiff was an intended third-party beneficiary of that contract.

These facts still do not state a claim for discrimination under § 1981. Although Plaintiff alleges that she was provided insufficient medical care, she does not allege any facts that support a reasonable inference that this was the result of discrimination. Plaintiff alleges three facts potentially relevant to a discrimination claim. First, Plaintiff alleges that when she approached

the admission window she was told to stand back while a white woman whose condition was not as serious as Plaintiff's was helped. Second, Plaintiff alleges that she waited several hours to be treated, while other patients—the majority of whom were white—were treated. As the Court previously concluded, even assuming it was Shaw who told Plaintiff to step back, or who decided in what order to treat patients—which Plaintiff does not allege—neither of these two interactions allows the Court to draw the reasonable inference that Shaw discriminated against Plaintiff. Third, Plaintiff alleges that Shaw mistreated Plaintiff in retaliation for a discrimination claim that Plaintiff had filed against another provider, Chow. Plaintiff alleges that Shaw and Chow were colleagues. Plaintiff provides no factual support, however, for either of these conclusory allegations. Therefore, Plaintiff's § 1981 claim against Shaw is dismissed.

Because Plaintiff has again failed to state a claim under § 1981, Plaintiff's claims against Shaw are dismissed with prejudice. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment.") (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

### G.  Plaintiff's Various Motions to Compel (ECF 188)

In one document, Plaintiff files five motions. ECF 188. First, Plaintiff moves the Court to compel Defendants Stephenson and Meadows to testify as expert witnesses. Second, Plaintiff moves the Court to compel Defendant Shaw to provide a copy of her "provider contract." Third, Plaintiff moves the court to compel the Oregon Health Authority to reopen and investigate Plaintiff's complaints. Fourth, Plaintiff moves the Court to compel the Oregon State Board of Nursing to produce its results of their investigation into Plaintiff's complaint against provider Lawrence Maldonado. Fifth, and finally, Plaintiff moves the Court to compel the U.S. Department of Health and Human Services to reopen and investigate Plaintiff's complaints. The

motions contained in ECF 188 are denied in their entirety. Plaintiff's motions lack legal authority, factual support, or both.

## CONCLUSION

Defendant Suzanne Meadows and Charla Stephenson's motion for summary judgment (ECF 98) is GRANTED as against Plaintiff's Third Amended Complaint. Plaintiff's claims against the following defendants, who have previously been dismissed from this case, are dismissed from Plaintiff's Third Amended Complaint: Metro West Ambulance Service, Inc.; Adventist Medical Center; Krista Swaninger; State of Oregon; Oregon Department of Justice; Oregon Board of Nursing; and Oregon Health Authority. Plaintiff's motion for reconsideration (ECF 158) of the Court's December 22, 2017 Order is DENIED. Providence Health & Services – Oregon's request for permission to file a summary judgment motion (ECF 160) is GRANTED. Providence may file a summary judgment motion within ten days of this Opinion and Order. Plaintiff's motion to compel defendant-physicians to testify as medical experts (ECF 162) is DENIED. Defendant Shaw's motion to dismiss (ECF 164) is GRANTED, and Plaintiff's claims against Shaw are dismissed with prejudice. Plaintiff's various motions to compel filed together as ECF 188 are DENIED in their entirety.

**IT IS SO ORDERED**.

DATED this 7th day of February, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge